UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOSH WILLIAMSON                                                                    Plaintiff

v.                                                Civil Action No. 3:19-cv-P552-RGJ

KATHLEEN KENNEY, *et al.*                                      Defendants

\* \* \* \* \*

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Josh Williamson filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court upon initial review of the action pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will dismiss some of Plaintiff's claims and allow other claims to proceed for further development.

### I.    SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff is a convicted inmate currently incarcerated at the Roederer Correctional Complex (RCC). He sues the following Defendants: Kathleen Kenney, identified as a commissioner of the Kentucky Department of Corrections (DOC); Steven Williams, the Jailer of the Fulton County Detention Center (FCDC); Jane Doe 1, a nurse at FCDC; Jane Doe 2 and John Doe 1, corrections officers at FCDC; William Grenier, a medical practitioner at RCC; Jessie Ferguson, the Warden of RCC; and Arnold Chisholm, a deputy warden of RCC. He sues Defendants Kenney, Williams, Jane Doe 1 and 2, and John Doe 1 in their individual and official capacities, Defendant Grenier in his individual capacity only, and Defendants Ferguson and Chisholm in their official capacities only.

Plaintiff states that on February 25, 2019, he was housed in a "black mold infested dorm" at FCDC and "slipped and fell from the water that constantly leaks from the walls and ceilings." He states that as a result he was in serious pain and was taken to the emergency room. He states,

"At the hospital the doctor took x-rays and told me I had broke right shoulder, a broke right upper arm, dislocated right shoulder, and possible nerve damage to my right hand from the fall due to a numb and tingling feeling." According to the complaint, the doctor attempted to sedate Plaintiff so he could pull his shoulder joint back in place, but Plaintiff was unable to be sedated and could not be given any more medication at that time. Plaintiff states, "The doctor told the transport officer that I needed emergency surgery that day and that he could have me stat flight to Vanderbilt or U of L for surgery that day in a matter of minutes." He asserts, "Instead, I was taken back to FCDC with my shoulder and arm still broken as well as dislocated and I was put in an isolation cell . . . with no type of medical care or pain medication for 3 days." He continues, "I laid there with my arm and shoulder broken and dislocated and begged the officer (Jane Doe 2) to at least give me some Tylenol or ibuprofen for my pain and she told me I had to wait for doctor to call back. This went on for 3 days with no medical attention whatsoever."

Plaintiff maintains that he asked if he could file a grievance but was denied. He further states as follows:

> I even asked the nurse (Jane Doe 1) if she would give me something for the pain I was having and she told me to "suck it up and stop crying." I told her to get whoever was in charge so I could speak to them about my situation and she called for an officer (John Doe 1) who came to my cell and told me that they couldn't do nothing or give me nothing for pain until [DOC] called them and said otherwise. I told John Doe 1 that my arm and shoulder was broke and dislocated and the doctor at hospital . . . said I needed surgery on the day of injury (Feb. 25th 2019) because of the seriousness of my injury. I have documents of diagnosis and I tried to show (John Doe 1) so he could let nurse (Jane Doe 1) know so I could get some help and he (John Doe 1) said, "I would live through it." He (John Doe 1) said DOC was responsible for me and any of my medical needs and that I needed to leave his staff alone.

Plaintiff also states that he wrote a letter to the FCDC Jailer, Defendant Williams, and never got a response from him. He also asked Defendant Jane Doe 2 if he could see the jailer and she said "'he didn't want to be bothered and I needed to man up.'"

Plaintiff reports that three days after his fall Defendant Nurse Jane Doe 1 told him that he was going to see a specialist. He states that on February 28, 2019, he was taken to a surgeon who looked at the x-rays and said that his "arm and shoulder were in very bad shape" and that he needed surgery as soon as possible. According to the complaint, the surgeon noticed that Plaintiff's shoulder was still dislocated and "was angry because of the medical neglect that FCDC put me through." Plaintiff states that he begged the surgeon to pull his shoulder back in place but the surgeon said that was not his field of practice. Plaintiff states, "I told him that I was scared that the transport officer was just going to take me back to FCDC and put me back in isolation cell again and not treat me for my pain again . . . ." He states that the surgeon told the transport officer to call FCDC to let them know Plaintiff was being taken to the hospital to have his shoulder pulled back in place and that the surgeon said, if not, "'he would file inhumane medical neglect on FCDC himself.'" Plaintiff states that he was then taken to the hospital and "finally got my arm reduced and shoulder pulled back in place."

Plaintiff states that he was taken back to FCDC and put in an isolation cell. He states, "I still needed surgery and FCDC refused any treatment but finally gave me 400 mg of ibuprofen on no more than 5 or 6 total occasions from February 28th 2019 till March 10th 2019." Plaintiff also states that FCDC told him that he was a danger to himself and that was the reason he was placed in an isolation cell "which was no different then a disciplinary cell (hole) which is used for punishment." He states, "FCDC also stated on numerous occasions that DOC is the ones who are responsible for my medical care."

Plaintiff reports that he was sent to RCC on March 11, 2019, for his medical condition. He states that when he got to RCC he was prescribed 800 mg ibuprofen and 500 mg Tylenol. He states that Defendant Grenier, an APRN, told him that he "would see an outside doctor real soon but he couldn't do much more for me about my pain."

3

Plaintiff states that on April 3, 2019, he went to the hospital to have an MRI, which "revealed fractures, deformities, tears, and sprains (Documented but too many medical names to name). Even after my MRI reading all the DOC provider (Grenier) would give me was Tylenol and ibuprofen." He states that he told Defendant Grenier that his right hand was still numb and that Defendant Grenier told him that it could be nerve damage from the injury. He asserts that Defendant Grenier told him that his arm was in "bad shape" and that he would probably need surgery.

Plaintiff states that on April 29, 2019, he had an appointment to see a "surgeon/ orthopaedic specialist to discuss my injury and medical procedure options" but that it was canceled because the DOC officer who transported him was late for the appointment. Plaintiff asserts that on May 21, 2019, Defendant Grenier asked him how he was feeling and that Plaintiff told him that he "was still in severe pain in my arm and shoulder and that my hand was still numb most of the time so he gave me a steroid shot and prescribed me muscle relaxers."

Plaintiff maintains that on June 5, 2019, he saw the surgeon and received an "x-ray of my right shoulder but not my right arm, and he told me I had some serious injuries (documented) and I would need surgery and needed it months ago." Plaintiff states that on June 6, 2019, he saw Defendant Grenier again and that he was prescribed "Tylenol 3 for my pain and that didn't help much." He states, "I keep telling Grenier that it ain't just my right shoulder that's hurting but my right arm as well."

Plaintiff asserts that on June 25, 2019, he went to RCC medical because he bumped into someone with his right shoulder, which caused severe pain to his right shoulder and arm. He states that he also lost feeling in his right hand and had a "burning pain in my right wrist and hand when it wasn't numb feeling." He states, "They gave me a shot for the pain and it didn't

help."  He states that he still was in pain the following day and went again to medical and "nothing got done."

Plaintiff further states that on July 2, 2019, he spoke to a medical staff member about medical grievances he had filed and "told her that I was not happy about the 5 month delay and constant pain I've been experiencing and that something had to be done." He also told her that his pain in his right arm "was just as bad as the pain in my shoulder but the medical staff don't even look at my arm." He states that the medical staff member told him that the surgery was scheduled but could not tell him more. He states that he was scheduled to have surgery on July 8, 2019, but that the surgeon had to reschedule it.

Plaintiff reports that he had surgery on July 18, 2019, on his right shoulder. He states, "It has been 10 days since my surgery (July 28th 2019) and my right arm is till in serious pain and my right hand has had the numb feeling the whole time."

Plaintiff states that the "named defendants in this complaint should be held liable" under the Eighth Amendment "under (2) different claims." He states, "1) The defendants through deliberate indifference denied humane conditions of confinement by knowingly putting me at a substantial risk of serious harm. Cell 201A was infested with black mold due to the water that leaks from walls and ceiling that caused floor to be slippery that caused my injury." He states that "FCDC was clearly aware of this problem from previous documents by other past inmates[]" and that corrections officers brought "mop bucket in all the time cause of water puddles."

Plaintiff also asserts: "2) My constitutional rights under the 8th amendment were violated also, by deliberate indifference to my serious medical need by the named defendants for denying or delaying access to my serious medical care that I needed." He continues, "Whether prison doctors or prison officials, or FCDC or RCC which are both responsible by DOC. To delay surgery for (5) months and to suffer from an injury that could be permanent due to severity is

5

clear cut unnecessary and wonton infliction of pain." He states that his injury is serious and that "DOC as a whole is at fault for the pain I have suffered physically and mentally, and they have clearly violated my constitutional rights."

As relief, Plaintiff requests compensatory and punitive damages and injunctive relief in the form of "not being retaliated against by all defendants."

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be

clear cut unnecessary and wonton infliction of pain." He states that his injury is serious and that "DOC as a whole is at fault for the pain I have suffered physically and mentally, and they have clearly violated my constitutional rights."

As relief, Plaintiff requests compensatory and punitive damages and injunctive relief in the form of "not being retaliated against by all defendants."

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be

clear cut unnecessary and wonton infliction of pain." He states that his injury is serious and that "DOC as a whole is at fault for the pain I have suffered physically and mentally, and they have clearly violated my constitutional rights."

As relief, Plaintiff requests compensatory and punitive damages and injunctive relief in the form of "not being retaliated against by all defendants."

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be

'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. ANALYSIS

The Court construes the complaint as alleging Eighth Amendment claims based on the conditions of Plaintiff's cell at FCDC which allegedly caused his fall and based on the alleged delay or denial in medical care for his injuries.

#### A. Official-capacity claims

**1. Defendants Kenney, Ferguson, and Chisholm**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Defendants Kenney, Ferguson, and Chisholm are employed by the Commonwealth of Kentucky. Claims brought against state employees in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, the Eleventh Amendment acts as a bar to claims for monetary damages against state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Therefore, Plaintiff's official-capacity claim against Defendants Kenney, Ferguson, and Chisholm for monetary damages must be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants who are immune from such relief.

With regard to Plaintiff's claim for injunctive relief, he requests the Court to grant injunctive relief by "not being retaliated against by all defendants." The request that the Court protect Plaintiff from potential retaliation in the future must be denied. Any such threat is

speculative and at this time merely hypothetical, which is insufficient to warrant injunctive relief. *See O'Shea v. Littleton*, 414 U.S. 488, 494-96 (1974). Therefore, Plaintiff's official-capacity claims against Defendants Kenney, Ferguson, and Chisholm for injunctive relief must also be dismissed for failure to state a claim upon which relief can be granted.

**2. Defendants Williams, Jane Does 1 & 2, and John Doe**

As stated above, suing employees in their official capacities is the equivalent of suing their employer. *Kentucky v. Graham*, 473 U.S. at 166. Therefore, Plaintiff's official-capacity claims against Defendant Williams and the Doe Defendants are actually brought against their employer, Fulton County.

Upon review, the Court will allow Plaintiff's Eighth Amendment claims based on his allegations concerning the conditions of his cell at FCDC and his allegations concerning the delay or denial of medical care to proceed against Fulton County.

The Court will direct the Clerk of Court to add Fulton County as a Defendant to this action. The official-capacity claims against Defendant Williams and the Doe Defendants will be dismissed as redundant to the continuing claim against Fulton County. *See Smith v. Brevard Cty.*, 461 F. Supp. 2d 1243, 1251 (M.D. Fla. 2006) (dismissing claims against individuals sued in their official capacity as redundant where their employer was also named as a defendant); *Smith v. Bd. of Cty. Comm'rs of Cty. of Lyon*, 216 F. Supp. 2d 1209, 1219-20 (D. Kan. 2002) (dismissing the claim against the sheriff sued only in his official capacity as redundant since the governmental entity of which he was an officer or agent was also a defendant in the action).

### B. Individual-capacity claims

**1. Defendants Kenney, Ferguson, Chisholm, and Williams**

Plaintiff lists Defendants Kenney, Ferguson, and Chisholm as Defendants, but the complaint contains no other reference to these individuals. Rule 8(a) of the Federal Rules of

8

Civil Procedure requires that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the Court is aware of its duty to construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the Federal Rules of Civil Procedure by providing Defendants with "fair notice of the basis for his claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). To state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains. *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976). Because Plaintiff has not alleged any personal involvement by Defendant Kenney, Ferguson, or Chisholm, the claims against these Defendants must be dismissed.

Moreover, to the extent Plaintiff seeks to hold Defendants Kenney, Ferguson, and Chisholm liable based on his or her supervisory authority as a commissioner of DOC or the warden or deputy warden of RCC, under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("Section 1983 liability will not be imposed solely upon the basis of respondeat superior."). Rather, a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. at 676. To establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). The complaint makes no factual allegations against Defendants

Kenney, Ferguson, or Chisholm and, therefore, fails to allege that they encouraged or implicitly authorized, approved, or knowingly acquiesced in any unconstitutional conduct.

Furthermore, as to Defendant Williams, the FCDC Jailer, Plaintiff's only allegation concerning him is that Plaintiff wrote him a letter and never got a response and that he asked to see Defendant Williams and was told that Defendant Williams "didn't want to be bothered . . . ." However, a prison official cannot be held liable under § 1983 for failing to remedy alleged unconstitutional behavior, because such actions are not equivalent to "approv[ing] or knowingly acquiesc[ing] in the unconstitutional conduct," for which supervisors can be liable. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'") (citation omitted); *see also Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) ("[Plaintiff] merely alleged that Martin failed to remedy the situation after he had been informed of the problem via [plaintiff's] grievance. [This] allegation does not state a claim because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel."); *Stewart v. Taft*, 235 F. Supp. 2d 763, 767 (N.D. Ohio 2002) ("[S]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act.").

Accordingly, the individual-capacity claims against Defendants Kenney, Ferguson, Chisholm, and Williams will be dismissed for failure to state a claim upon which relief may be granted.

**2. Defendants Jane Doe 1 and 2, John Doe 1, and Grenier**

Upon review, <u>the Court will allow Plaintiff's Eighth Amendment claims based on his allegations of delay or denial of medical care to proceed against Jane Doe 1 and 2, John Doe 1, and Grenier in their individual capacities</u>.

## IV. ORDER

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the official-capacity claims against Defendants Kenney, Ferguson, Chisolm are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and for seeking relief from a defendant who is immune from such relief.

**IT IS FURTHER ORDERED** that the official-capacity claims against Defendants Williams, Jane Does 1 and 2, and John Doe 1 are **DISMISSED** as redundant to the continuing claim against Fulton County.

**IT IS FURTHER ORDERED** that the individual-capacity claims against Kenney, Ferguson, Chisolm, and Williams are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The **Clerk of Court is DIRECTED to add Fulton County** as a Defendant to this action.

The **Clerk of Court is further DIRECTED to terminate Defendants Kenney, Ferguson, Chisolm, and Williams** as no claims remain against these Defendants.

The Court will enter a separate Service and Scheduling Order to govern the claims that have been permitted to continue. In allowing the claims to proceed, the Court passes no judgment on their outcome or ultimate merit.

Date: August 16, 2019

Rebecca Grady Jennings, District Judge
United States District Court

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
Fulton County Attorney
A961.010